Knox, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Speed—Signals—Evidence—"Stop, look and listen."*

The testimony of one witness, who had no qualification to judge of speed, that a train was running at the rate of sixty miles an hour on a rainy day across a country crossing is insufficient to carry a case to the jury, and this especially so where such witness is contradicted by the schedule of the train and the direct testimony of the engineer.

The testimony of one witness, a passenger, that a train approached a crossing without ringing a bell or sounding a whistle, contradicted by the engineer, fireman, conductor and brakeman, is insufficient to carry a case to the jury on the question of the railroad company's negligence.

Where a person stops at a point 125 feet from a grade crossing, and then proceeds without stopping again, in a heavy rain, with his wagon curtains down, and with the view obstructed, until the tracks are reached, he is guilty of contributory negligence, and if he is killed by a passing train no recovery can be had for his death.

Argued Feb. 3, 1902.  Appeal, No. 253, Jan. T., 1901, by plaintiff, from judgment of C. P. Montgomery Co., Oct. T., 1900, No. 179, on verdict for defendant in case of Fayetta Knox v. Philadelphia & Reading Railroad Company.  Before McCOLLUM, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ.  Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before WEAND, J.

At the trial the court gave binding instructions for defendant.

Verdict and judgment for defendant.  Plaintiff appealed.

WEAND, J., subsequently filed the following opinion :

On the conclusion of the testimony in this case, we directed a verdict for defendant for the reason that no negligence on its part had been shown.

As no motion for a new trial was made, the court had no opportunity to review the case and spread its reasons upon record. As the lower courts are called upon to decide points of law in the hurry of trial without time for examination of authorities, it would seem but fair, for counsel, before appealing a case, to allow the court an opportunity for review.  As this was denied us in this case, we exercise our right at this time to place our opinion upon record confirming our ruling at the trial.

The deceased was killed at a country railroad crossing.  He approached the crossing during a rainstorm, seated in a carriage and driving one horse.  He was struck almost as soon as he entered on the tracks.  The accident was witnessed by but one person other than the engineer.

As the defendant company was in the exercise of its rights in running the train, the plaintiff was obliged to show, (1) a case clear of contributory negligence on part of the deceased, and (2) negligence on the part of the defendant.  Upon an accident at a railroad crossing, if there be no evidence of negligence, the jury should not be permitted to infer it on the part of the railroad company : Sullivan v. Penna. Co., 7 Atl. Repr. 177.

It was claimed and endeavored to be shown that the defendant was negligent in two particulars, viz : (1) in running at an

unusual and dangerous rate of speed; (2) in not giving the customary or proper signals on approaching the crossing.

It must be conceded, that unless the plaintiff's testimony established by competent proof, either of these propositions, the direction of the court was proper.

Remembering that the scene of the accident was the crossing of a country road, what is the law as to the rate of speed on the part of a steam railroad? The point was so clearly stated by Mr. Justice DEAN in Newhard v. Penna. R. R. Co., 153 Pa. 417, as to require no elaboration on our part. There is no rule of law which defines the rate of speed allowed a passenger train, although, of course, there must in certain cases be limitations, but in this case it was the ordinary running of a passenger train at a rate which, if it amounted to that claimed by plaintiff, could not be claimed as unusual. There was not a single fact or circumstance, except the rain, which could by any process of reasoning require the engineer to lessen his speed, and depart from his running schedule.

In Childs v. Penna. R. R. Co., 150 Pa. 73, it was held the right of a railroad company to move its trains at such rate as the necessities of its business, or the requirements of the public may make necessary, is subject only to such restrictions as may be found necessary in cities and populous towns. The movement of trains must be regulated by the railroad companies in the exercise of a business discretion, and upon consideration of the competition they have to encounter and the necessities of modern business. We do not think a jury may fix the maximum rate of speed at which a train shall be moved in the open country, or that a high rate of speed is negligence per se.

If the question of speed was not for the jury, then the rate if not excessively unusual, had no bearing on the case, if defendant in other respects did their duty. But there was no competent proof of excessive or improper speed. The only witness for plaintiff who testifies to speed was a passenger, Mr. Daniel Steinmetz, who testifies page (5) : " After the train left Quakertown, that day and on down to Krupp's crossing, it was going very rapidly. I could not tell how many miles an hour because I have no means of measuring that, but I was cognizant of the fact that the train was moving very rapidly from the rapidity with which we were passing objects and the jerking of

the train. The train was running very rapidly." And page 16 : " Between those times, the train was running at the rate of sixty miles an hour. It was raining very hard; it was one of those sudden storms that we have sometimes, that come up very suddenly, and it was raining bucketfuls, a very severe storm."

The witness did not show anything which would qualify him to judge of the rate of speed, and he was contradicted by the positive evidence of the engineer. To allow a jury to decide this question upon the evidence before them, would lead to the usual result of a verdict against the defendant. To say that a passenger whose training or experience has not qualified him to judge of speed run on a rainy day, as described for the reasons given by this witness, can judge and testify with any degree of accuracy that a train is running at forty-five or sixty miles an hour is absurd, and when opposed to the schedule of the train and the positive evidence of the engineer, ought to have no weight with court or jury.

It is not unusual for passenger trains to run rapidly, nor for the train to have a jerky motion when running at moderate speed; nor is sixty miles an hour considered unusual on first-class roads.

It was contended that because of the rain, the speed should have been reduced. Whether this would have added to the safety of other travelers, or whether it would be good railroading, we are unable to decide, but if increased care was required of the railroad company, it was equally so on the part of the traveler.

The evidence of the witness amounted to no more than a scintilla and was insufficient to rebut the presumption that the engineer did his duty, or to rebut his positive testimony as to speed.

" A mere guess or conjecture respecting the rate of speed was not sufficient to establish it:" Smith v. Holmesburg, etc., Electric Railway Co., 187 Pa. 451.

The only witness to show that no whistle was blown or bell was rung, was Mr. Steinmetz, who said (page 6) : " No whistle before the crossing was reached, that is, at the regular distance from the crossing," and page 10, " There was no bell rung before approaching the crossing." "I did not hear any whistle

until the one I spoke of when the crash occurred. That was a rapid, jerky whistle."

He was contradicted by the engineer,. fireman, conductor and brakeman. Here again we have the case of a passenger whose attention was not directed to signals, and yet might well say that he heard none. How many in a train do hear the whistle or can with certainty say that none was sounded? In Hauser v. Central R. R. Co. of N. J., 147 Pa. 440, the witness was asked: " Q. Did you hear the blowing of the whistle that night on the train? A. No, sir; if I did, I did not hear anything. Q. Did you hear the ringing of the bell? A. No, sir." The court said, " She simply says she did not hear any whistle or bell, and as against the positive affirmative testimony of six witnesses who did hear it, her omission to hear is simply a scintilla of evidence, which is not enough to make out a charge of negligence in that respect," and the case was reversed without a new venue. If but a scintilla, and not sufficient to justify a charge of negligence, why should the court submit it to the jury? In this case we adopted the conclusions given by the Supreme Court and instructed the jury that both the evidence as to speed and as to signals being insufficient to charge defendant with negligence, the verdict must be for the defendant.

The plaintiff, however, relies on an expression contained in the opinion of the Supreme Court in Laib v. Penna. R. R. Co., 180 Pa. 503 : " In this connection we may add that it was held in Haverstick v. Penna. R. R. Co., 171 Pa. 101, that the presumption that the trainmen performed their duty, when a train approached a grade crossing, might be rebutted by the testimony of a single witness for the plaintiff that no whistle was sounded or bell rung." It will be observed that this was an affirmation of what was ruled in the case cited, and on referring to that case, we find that what was really ruled was, that the presumption might be overcome by the testimony of a single witness for plaintiff, etc., " if the defendant offers no evidence on the subject."

In Daubert v. Delaware, etc., R. R. Co., 199 Pa. 345, several witnesses testified as to the fact that no warning of the approach of the train was given but " they each had a reason as well as an opportunity for hearing the signal of the incoming train," etc.

We therefore adhere to our ruling that in neither respect as claimed by plaintiff was there evidence of negligence on the part of the defendant company.

At the conclusion of plaintiff's testimony, the defendant moved for a nonsuit, which motion was overruled. It was claimed that even if defendant was negligent, the decedent was also guilty of contributory negligence in not stopping immediately before entering upon the track. As this question will no doubt be raised on the appeal, it may be proper to make a statement as to the facts.

It was claimed by plaintiff that her husband stopped at the best point from which to get a view of the railroad, and that from the point where he did stop until the crossing was reached, the view toward the approaching train was obstructed by an embankment and bushes. We recognize the fact that the higher courts have ruled that whether the point at which the "stop, look and listen" took place was the best place, is a question for the jury, but when plaintiff shows that after leaving that point 125 feet distant, until a traveler gets on the track, no view of the road can be had until you get on the track, it ought not to be held unreasonable that the traveler should again stop. In this case, having stopped at a point seventy-five or 125 feet from the crossing, in a heavy rain, with the wagon curtains down and with the view obstructed until he reached the tracks, it might well be said that he was negligent.

In reading the testimony as to the condition of the approach to the railroad, it must be kept in mind that in the direction decedent was going, Lansdale was to his right and Bethlehem, from which point the train was coming, to his left. Much, in fact, most of the testimony, describes the difficulty of seeing toward Lansdale, but all plaintiff's witnesses admit a better view toward Bethlehem. The only witness to the accident describes the decedent as stopping at a point sixty or seventy-five feet from the crossing. Then he started his horse and drove pretty fast. "At that moment I looked up the track and saw the train coming in a hurry. At that moment I heard a whistle, and the strike both together." This witness was 200 feet from the crossing. Some of the other witnesses for plaintiff fix the stopping at 125 feet from the crossing. If this was the best point from which to look, he would have seen as far as the signal

post, 500 feet distant from the crossing. He then drove rapidly, with curtains down in a severe rain, and was struck as soon as he got on the tracks. He must have seen the train, for it could not have been beyond the signal post or at least not far from it. If prevented from seeing it by the rain, the duty to proceed cautiously and again stop was the greater; and it almost seems incredible that a man can be within twenty feet of a railroad and not hear an approaching train even although no whistle was sounded or bell rung.

We ruled this case with due regard to the rights and duties of the traveler and the railroad, and upon what we conceive to be the rulings of the Supreme Court. If we were in error in not holding that the deceased was guilty of contributory negligence, our ruling would still be correct, even if our reasons assigned would not sustain the verdict.

*Error assigned* was in not submitting the case to the jury.

*Nicholas H. Larzelere*, with him *Gilbert Rodman Fox* and *Muscoe M. Gibson*, for appellant.

*Charles Heebner*, with him *James Boyd*, for appellee.

PER CURIAM, May 19, 1902:

In this case the jury by direction of the court rendered a verdict in favor of the defendant. This direction was based on the conclusion of the court that the evidence was not sufficient to warrant a submission of the case to the jury. This conclusion was justified by the evidence; we therefore affirm the judgment on Judge WEAND'S opinion.