## Corcoran, Appellant, v. Pennsylvania Railroad Company.

*Negligence—Grade crossing—Evidence as to signal—Province of court and jury.*

In an action against a railroad company to recover damages for personal injuries at a grade crossing, where the evidence is conflicting as to whether a signal was or was not given by the approaching train, the case is for the jury.

*Negligence—Contributory negligence—Grade crossing—" Stop, look and listen."*

The whole duty of one about to cross the tracks of a steam road at grade is not in all cases confined to his stopping, looking and listening for the approach of a train. He must stop at a proper place and when he proceeds he should continue to look and to observe the precautions which the danger of the situation requires. He should stop again if there is another place nearer the tracks from which he can better discern whether there is danger.

In an action against a railroad company to recover damages for personal injuries sustained at a public grade crossing, the plaintiff is not entitled to have his case submitted to the jury where the evidence shows that he stopped his team at a point about fifty feet from the track and looked and listened, that his view to the east was shut off by cars standing on extra tracks, that he saw a freight train approaching slowly from the west, that he then whipped up his horses, and without further stopping or looking to the east drove on to the tracks and was struck by an express train

coming from the east, which train he could have seen eight hundred feet off, if he had looked, before actually going on the first track.

Argued Feb. 26, 1902.   Appeal, No. 17, Jan. T., 1902, by plaintiff, from judgment C. P. Chester Co., April T., 1901, No. 23, on verdict for defendant in case of John F. Corcoran v. Pennsylvania Railroad Company.   Before McCOLLUM, C. J., MITCHELL, DEAN, BROWN and MESTREZAT, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before HEMPHILL, P. J.

The facts appear by the opinion of the Supreme Court.
Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Thomas W. Pierce*, for appellant, cited on the question of contributory negligence: Elston v. Del., etc., R. R. Co., 196 Pa. 595; Tiffany v. Del., etc., R. R. Co., 185 Pa. 308; Philpott v. Penna. R. R. Co., 175 Pa. 570; Werner v. Penna. R. R. Co., 89 Pa. 59; Newton v. Pitts., etc., R. R. Co., 18 Pa. Superior Ct. 18; Muckinhaupt v. Erie R. R. Co., 196 Pa. 216; Cookson v. Pitts., etc., Ry. Co., 179 Pa. 184; Muscarro v. N. Y. Cent., etc., R. R. Co., 192 Pa. 8; Fisher v. Monongahela, etc., R. R. Co., 131 Pa. 292; Penna. R. R. Co. v. Coon, 111 Pa. 430; Davidson v. Lake Shore, etc., R. R. Co., 171 Pa. 522; Gray v. Penna. R. R. Co., 172 Pa. 383; Greenfield v. Harrisburg Pass. Ry. Co., 178 Pa. 194; Lake, etc., Railway Co. v. Frantz, 127 Pa. 297; Ely v. Pitts., etc., Railroad Co., 158 Pa. 236; Bare v. Penna. Railroad Co., 135 Pa. 95; Neiman v. Del., etc., Canal Co., 149 Pa. 92; McGill v. Pitt., etc., Ry. Co., 152 Pa. 331; Whitman v. Penna. Railroad Co., 156 Pa. 175; Arnold v. Phila., etc., Railroad Co., 161 Pa. 4; Hoffmeister v. Penna. Railroad Co., 160 Pa. 568; Keng v. Baltimore & Ohio Railroad Co., 160 Pa. 644.

*John J. Pinkerton*, for appellee, cited on the question of contributory negligence; Urias v. Penna. R. R. Co., 152 Pa. 326; Beynon v. Penna. R. R. Co., 168 Pa. 642; Aiken v. Penna. R. R. Co., 130 Pa. 380; Hartman v. Harris, 182 Pa. 172; Myers

v. B. & O. R. R. Co., 150 Pa. 386 ; Marland v. Pitts., etc., R. R.
Co., 123 Pa. 487 ; Ritzman v. P. & R. R. R. Co., 187 Pa. 337 ;
Cent. R. R. Co. of New Jersey v. Feller, 84 Pa. 226 ; Wojochoski
v. Cent. R. R. Co., 10 Pa. Superior Ct. 469.

OPINION BY MR. JUSTICE DEAN, October 13, 1902 :

Corcoran, the plaintiff, was a truck farmer living near
Coatesville in Chester county, and in carrying on his business
had occasion to make almost daily trips from his farm into the
town.    The farm at one side is bounded by the railroad com-
pany's right of way.    A lane leads from the farmhouse across
the railroad tracks at grade into the town, where at the bound-
ary of the latter, it becomes a street called Third avenue ; the
street has a rather steep ascent just as it approaches the rail-
road and attains the level of the tracks, of which there are two,
about fifty feet from them, the north track being for west-bound
trains and the south for east-bound.    Just east of the crossing
there are four tracks ; the two additional tracks east are used,
principally, for the detention of freight trains while passenger
trains pass.    Corcoran had crossed the railroad with his horse
and wagon into the town earlier in the morning, had transacted
his business, and about ten o'clock was returning home ; he
drove up Third avenue until he reached the level of the rail-
road about fifty feet from the north track ; he stopped there,
looked and listened ; about two or three hundred yards distant
he saw a freight train slowly approaching from the west on the
south track ; he looked east to see if a train were coming from
that direction, but his view was obstructed by box freight cars
standing east of the crossing on the extra tracks and he saw no
train coming ; he then urged his horse into a faster gait, and
without again stopping, attempted to cross the tracks ; when he
reached the north track his horse was struck by the Pittsburg
express, a train running west at about twenty miles an hour,
and which made no stop at Coatesville.    The horse was killed,
the wagon destroyed and the plaintiff seriously injured.    He
averred the injury was caused by the negligence of defendant,
in that it gave no warning, either by whistle or bell of its ap-
proach to the crossing ; thereupon, he brought this suit to re-
cover damages.

At the trial the evidence was very conflicting as to whether

warning was given, some witnesses who had full opportunity
to hear testifying, that none was given, while the engineer,
fireman and switchman, as well as other witnesses, testified
positively, that the locomotive whistle was loudly blown.    The
learned judge of the court below was of opinion, that the evi-
dence of negligence on part of the defendant was insufficient,
and further, that it established contributory negligence on part
of the plaintiff ; for these reasons he peremptorily instructed
the jury to find for defendant.    Afterwards, in opinion filed on
motion for a new trial, he concedes that on the question of de-
fendant's negligence, the case ought to have gone to the jury,
but that the evidence of plaintiff's contributory negligence was
clear ; he therefore overruled the motion for a new trial and
directed judgment to be entered on the verdict.    We now have
this appeal by plaintiff.    As to defendant's negligence, although
the evidence was contradictory, it was clearly the function of
the jury to pass upon it and ascertain the truth.    The weight
of it, probably, inclined to the side of defendant, for assuming,
as we ought to assume, that the witnesses on each side were
truthful, their conflicting statements are reconcilable on the
theory, that those who testified for plaintiff did not observe the
warning, because there was no special reason why it should at-
tract their attention ; in view of the fact that very many trains
approached and passed that point all through the hours of the
twenty-four, a locomotive whistle was the most common of
sounds ; to notice that which occurred almost every hour would
have been to notice the common and ordinary ; it is not improb-
able, that those who lived near to or whose occupations kept
them near to that crossing would not have noticed the blowing
of a particular locomotive whistle.    But the testimony of those
whose duty it was to give the warning, who knew that their
own lives and the lives of others depended, in some measure
on whether they performed their duty, and whose attention
would be especially called to the fact, of whether they had per-
formed it by the disaster which followed only a few seconds af-
ter the warning ought to have been given, was certainly more
to be relied on, than that of those who had no duty to perform
in the matter, whose senses were not on the alert to hear and who
had no special reason to hear the whistle.    But whatever may
have been the probabilities as to this fact, the learned judge

was right, when on more deliberate consideration he concluded that it was a question for the jury.

But was he right on the other point, that, assuming as a fact defendant's negligence, plaintiff had shown a case of contributory negligence on his part? The plaintiff drove his horse to the top of the ascent from Third avenue where he was on a level with the railway tracks and fifty feet from them; there he stopped, looked and listened; that was the place he always had stopped, and usually, it was the most suitable place to see the tracks for a long distance both east and west; but at that particular time the view east was shut off by two trains of box cars standing on the extra tracks between the main tracks; it was no fault of his that he could not see through cars, but the fact that they were there, greatly increased the peril incident to the crossing; he stopped to "look and listen;" the sense of sight was, by reason of the box cars, useless to him at that point; this would dictate to the ordinary prudent man great care, for care exercised must be according to the circumstances. What was the conduct of plaintiff under these circumstances? He says, that after looking he thought he was all right, and gave his horse a cut with a switch starting him into a jog trot to cross; when he reached the north track the locomotive struck him. When he stopped to look he could see west that a freight was slowly coming towards the crossing but at such a distance he was in no danger from that direction; whether a train, fast or slow, was coming from the east he did not know for he could not see; he took the chances of hurriedly trotting across without stopping; whether increasing his speed would avoid danger would depend on the exact distance a coming train was from him and its rate of speed as well as his own; his increased speed might avoid the danger or might run him into it; prudent drivers on account of the uncertainty in the calculation, generally, avoid the danger by waiting until the expected train has passed; but here the plaintiff did not know whether a train was five or ten minutes distant; he did not know that its schedule was about that time. He did not again look, although before actually getting on the first track he could have seen it 800 feet off and could not have been run down had he stopped. An adult thoroughly familiar with the movements of trains at a crossing, knowing that it was about the time for

a train coming from the east, drives to within fifty feet of the tracks, stops and looks east but sees nothing because of a temporary obstruction to seeing in that direction, then rushed across and is struck by a train coming from the direction where he could not see ; if this be not a deliberate taking of a great risk rather than submit to a slight delay, we do not know what is. It is one which the ordinary prudent man would not take, and there is no other reasonable inference to be drawn from his conduct.    It was not care according to the circumstances ; the plaintiff's own evidence disclosed a case of contributory negligence.    The language of the learned judge of the court below, in the concluding paragraph of his opinion on the motion for a new trial, states the controlling facts with precision :

". The plaintiff himself says that he made but one stop, and when asked, " You did not look east again after you started ? " answered, " I might have looked that way," while all the witnesses who testified upon the subject say that he looked continuously to the west, and that such was undoubtedly the fact is evident from his driving directly in front of a train that he must have seen at any time after passing the baggage room had he looked to the east."

And Justice FELL, in Muckinhaupt v. Erie Railroad Co., 196 Pa. 216, states the law applicable to these facts :

" The whole duty of one about to cross the tracks of a steam road at grade is not in all cases confined to his stopping, looking and listening for the approach of a train.    He must stop at a proper place and when he proceeds he should continue to look and to observe the precautions which the danger of the situation requires.    He should stop again if there is another place nearer the tracks from which he can better discern whether there is danger."

The judgment is affirmed.