## OKLAHOMA UNION RY. CO. v. HOUK.

No. 13564—Opinion Filed Sept. 16, 1924.

Rehearing Denied Dec. 9, 1924.

Second Rehearing Denied April 7, 1925.

1. **Negligence—Contributory Negligence and Assumption of Risk—Jury Questions—Lack of Primary Negligence.**

While under section 6 of art. 23 of the Constitution, contributory negligence and assumption of risk are questions of fact to be submitted to the jury, this section does not apply to the primary negligence because of which a recovery is sought, and where there is no evidence reasonably tending to show that a defendant is guilty of negligence, it is error to submit the issue to the jury.

2. **Railroads—Injuries at Crossings—Lack of Negligence.**

A railroad company will not be held liable for personal injuries where there is no positive evidence, or reasonable inference to be drawn from the testimony, that the railroad was guilty of negligence.

3. **Appeal and Error—Review—Lack of Evidence—Reversal.**

While it is the well-settled rule in this state that a verdict based upon conflicting testimony will not be disturbed where there is evidence reasonably tending to support such verdict, yet in a case where there is no competent evidence reasonably tending to support a verdict and judgment, it will be reversed.

4. **Evidence—Weight—Affirmative and Negative Testimony.**

Ordinarily a witness who testifies to an affirmative is entitled to credit in preference to one who testifies to a negative.

· (Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3. ·

Error from District Court, Creek County; Lucien B. Wright, Judge.

J. H. Grant, for plaintiff in error.

Thompson & Smith, for defendant in error.

Opinion by RUTH, C. This action was brought in the district court of Creek county, by the defendant in error against the plaintiff in error, and for convenience the parties will be designated as they appeared in the court below.

Plaintiff in his petition alleges he was riding on the front seat of an automobile on Division street in the city of Sapulpa, the auto being owned and driven by John Maddox; that the defendant's interurban line intersects Division street at a "sharp angle"; that the day was "windy and rainy" and while going south on Division street that defendant's train, consisting of a motor car and trailer, proceeding in a northeasterly direction, struck the automobile in which plaintiff was a passenger, and caused the injury to the plaintiff, therein complained of. Plaintiff further alleges the defendant's railway tracks after leaving the Frisco depot run through a deep cut and around a curve until within 75 yards of the Division street crossing, and there is 75 years of straight track from the end of the cut to the crossing where the accident occurred.

Plaintiff's petition alleges negligence of the defendant in that its employes "drove the train at an excessive and dangerous rate of speed of 35 miles an hour around the curve and through the cut and along the railway to the crossing" and "that defendant wholly omitted to give any signal either by whistle or bell, of the approach of the train to said crossing, and owing to the wind and rain neither the plaintiff nor the driver of the automobile could see or hear the approach of the train to said crossing." Plaintiff alleges injury and prays judgment.

Defendant for answer files a general denial and for further answer alleges plaintiff and the driver of the automobile had been drinking intoxicating liquors, and that plaintiff knew the driver was intoxicated. That the railroad train could be seen from a distance of 150 yards before it reached the intersection of Division street; that the train was proceeding at a very moderate rate of speed; that the motorman sounded his signals, and the plaintiff by the exercise of reasonable diligence could have, and should have seen the train and heard the signals in ample time to have warned the driver of the automobile, but plaintiff failed to warn the driver of the approach of the train; that the automobile was driven against the side of defendant's train, and alleges contributory negligence.

After reply filed denying all the matters set up in the answer, the cause was tried to a jury and a verdict returned for the plaintiff, and defendant appeals.

Under the plaintiff's petition it was necessary for him to prove one or both acts of negligence complained of, to wit: First, that the defendant's train was being driven at an excessive or dangerous rate of speed; or, second, that the employes in charge of the train failed to sound any signals by whistle or bell.

Plaintiff testified that the weather was "windy and rainy," that they had the curtains on the car, that as they approached the interurban track, he opened the door and looked for a train but did not see or hear it, and the automobile slowed up within 30 or 40 feet of the track. It developed that the Frisco railroad crosses Division street just north of the interurban tracks, at a distance of 330 feet, and plaintiff testified he did not see the Frisco passenger train approaching them when they crossed the Frisco tracks but heard it go over the crossing just after the automobile crossed the Frisco tracks, and while they were approaching the interurban tracks, that he opened the door of the automobile and looked because he knew the interurban tracks were there and knew it was about time for the interurban car to come along there, that they crossed the Frisco tracks without looking or listening for a train. Plaintiff further testifies that he does not know anything about the speed of the train, all he knows is he did not see it or hear any signal.

Maddox, the auto driver, testified that he looked to the left and plaintiff looked to the right for the interurban, and the interurban train came from the right. Maddox could see the interurban tracks from the Frisco tracks a distance of 330 feet, that he had a few drinks and that whisky might have got into his car without him knowing it.

J. C. Dupree, locomotive engineer, was driving train No. 7 on the Frisco line and saw an automobile shoot across the Division street crossing just ahead of his train, does not know it was the same auto, but saw an auto at the interurban tracks. and saw people carrying a man away just after an auto crossed in front of his train, and the auto was going "mighty fast."

S. C. Rielly, a farmer by occupation, deposed he was walking down the interurban track toward the approaching train, that he knows it sounded its signals. as he was walking between the rails and the signals caused him to look up and step off the track to let the train go by, and as it went by it signaled again for the crossing and the second signal was longer than the first.

Some 19 witnesses were sworn and testified for defendant. Some testified to finding bottles of whisky in the wrecked car, and some ten or twelve witnesses, not connected with the defendant company, testified to hearing the interurban train whistle and ring the bell, and the speed of the train before it reached the crossing was variously estimated at from 10 to 15 miles per hour by disinterested witnesses.

V. O. Eastland, civil engineer, identified a plat made by him showing the Frisco tracks were 330 feet north of the interurban tracks, and from the Frisco crossing a person had an unobstructed view of the interurban tracks for a distance of 450 feet.

O. W. Keller, not employed by the defendant company, testified he was on the interurban car just inside the baggage car door, that the emergency brake was applied and the automobile struck the interurban just by the baggage car door, and he was within eight feet of it when it struck.

R. H. Terrell, employed by the Sinclair Pipe Line Company, was sitting in the first car of the interurban and heard the motorman blow his whistle two or three hundred feet from the crossing and heard the bell ring, motorman kept "jangling the bell."

S. G. Manlow of Greenfield, Mo., judged the interurban was running eight miles per hour and judged the auto was going 40 to 50 miles per hour. Heard the whistle sounded twice before reaching the crossing. The blasts were a minute and a half apart.

Mr. Watson, of the Tulsa fire department, was a passenger on the interurban. The cars were going eight or ten miles per hour, may be 12, and he heard both the whistle and bell about 100 yards from the crossing. He looked out the window and saw the auto swerve as though it was trying to miss the interurban. Witness was standing, and when the motorman applied the brake, it threw witness off his balance.

Mr. Hale was about 75 yards from the scene of the accident and heard the interurban whistle.

J. F. Trour, of Sapulpa, was about 250 feet from the scene of the accident and heard the interurban whistle for the crossing.

Guy Sheffield was on the interurban and "felt the air applied."

Cleo Duckworth, of Sapulpa, was near the scene of the accident and heard the interurban whistle for the crossing. R. E. Corcoran, conductor of interurban, felt the emergency air applied.

C. C. McWaters, conductor on the front car, heard the motorman blow the crossing whistle one or two hundred feet from the crossing.

M. L. Messick, motorman, testified he sounded the crossing whistle about 200 feet from the crossing, and applied the air.

The testimony for the plaintiff was wholly negative; the witnesses testifying that they never saw the train before it struck them and did not hear a signal.

It was essential to the maintenance of the plaintiff's case that he establish by competent evidence primary negligence on the part of the defendant, either that the train was being driven at a dangerous rate of speed, or that it failed to sound proper signals or warnings, under all the circumstances. This the plaintiff has wholly failed to do. The defendant submits ten assignments of error and argues them under one proposition, to wit:

"The court erred in refusing to instruct the jury to return a verdict for the defendant below, as requested in instruction No. 1, submitted by the defendant below."

Under section 6, art. 23, of the Constitution of Oklahoma, the question of contributory negligence and assumption of risk is a question of fact and in all cases whatsoever shall be left to the jury. ·

Nevertheless, contributory negligence presupposes primary negligence and must be proven as alleged, and in Phoenix Printing Co. v. Dunham, 32 Okla. 575, 122 Pac. 708, this court said:

"In an action by an employe against his employer, the fact of accident carries with it no presumption of negligence on the part of the employer, but such negligence is an affirmative fact for the injured employe to establish by the evidence."

And the court further held:

"While under sec. 6 of art. 23 of the Constitution, contributory negligence and assumption of risk are questions of fact to be submitted to a jury, this action does not apply to the primary negligence because of which a recovery is sought, and when there is no evidence reasonably tending to show that a defendant is guilty of negligence, it is error for the trial court to submit the issue to the jury."

See, also, Lusk et al., Receivers, v. Wilson, 81 Okla. 152, 197 Pac. 156; Buss, Administratrix, v. C.|, R. I. & P. Ry. Co., 77 Okla. 80, 186 Pac. 729; Midland Valley Ry. Co. v. Graney, 77 Okla. 54, 185 Pac. 1088; St. Louis & S. F. R. Co. v. Rushing et al., 31 Okla. 231, 120 Pac. 973; Solts v. S. W. Cotton Oil Co., 28 Okla. 706, 115 Pac. 776; Neeley v. S. W. Cotton Seed Oil Co., 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; Chi., R. I. & P. Ry. Co. v. Duncan, 38 Okla. 719, 134 Pac. 876; Chi., R. I. & P. Ry. Co. v. Folz, 54 Okla. 556, 154 Pac. 519.

In Phoenix Printing Co. v. Dunham, supra, in the body of the opinion this court said:

"The law however, does not require the primary question of the defendant's negligence to be submitted to the jury unless there is evidence reasonably tending to support the plaintiff's burden of proof on this subject. If the evidence reasonably tends to show that the defendant is negligent, then these defenses must be submitted to the jury. But until the evidence reasonably tends to show negligence on the part of the defendant, there is no issue which should go to the jury."

And in Patten v. Texas & P. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361. Mr. Justice Brewer, after announcing the principle later announced in Phoenix Printing Co. v. Dunham, supra, said:

"If the employe is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony."

In the instant case, the plaintiff's evidence was of an entirely negative character, the plaintiff and the driver testifying that they did not see the train until it struck; did not know its speed and did not hear a whistle or bell, while ten witnesses positively state the train was running at a speed estimated at from 10 to 15 miles per hour, and the whistle was blown and the bell was "jangling" as the train approached the crossing.

In Jensen v. Oregon Short Line R. Co. (Utah) 204 Pac. at p. 105, the court said:

"Six witnesses in the present case testified affirmatively as to the warnings given."

The court then sets forth the evidence of six witnesses on this point and continues:

"In the face of such evidence as this, together with the conditions and circumstances heretofore enumerated, the writer is of the opinion that the statement of the witness Priest, that he did not hear the whistle blow or the bell ring, created no conflict in the evidence, and that therefore the testimony of defendant's witnesses as to the warnings given stands uncontradicted and

unimpeached. In support of this conclusion our attention is called to the following cases: Christian v. Railroad, 35 Utah, 137, 99 Pac. 676; Gods v. N. P. R. R. Co., 48 Ore. 439, 87 Pac. 149; Richards v. Railroad, 41 Utah, 99, 123 Pac. 933; Jordan v. Osborne, 147 Wis. 623, 133 N. W. 32; Knoxes v. P. and R. Ry. Co., 202 Pa. 504, 52 Atl. 90; Van Patten v. Schenectedy St. Ry. Co., 80 Hun. 494, 30 N. Y. Supp. 501; Draper v. Baker, 61 Wis. 450, 21 N. W. 527; Ralph v. Railroad, 32 Wis. 177, 14 Am. Rep. 725; Corcora v. Penna. Ry. Co., 203 Pa. 380, 53 Atl. 240; Johnson v. N. Y. Cent. & H. R. R. Co., 173 N. Y. 79, 65 N. E. 916; Urias v. Penna. Ry. Co., 152 Pa. 326, 25 Atl. 566."

In Rizzittelli v. Vestine (Mass.) 141 N. E. 110, it is held:

"Testimony that no horn was heard before the party was struck by automobile, was merely negative, and of no value as evidence that it was not sounded."

To the same effect are: Lehigh Valley R. Co. v. MMangan, 278 Fed. 85; Craff v. Hines (Pa.) 116 Atl. 379; Goedhard v. Folstad (Minn.) 195 N. W. 281; Kelley v. Director General of R. R. (Pa.) 118 Atl. 436; Bessens v. N. Y. Cent. R. Co., 193 N. Y. S. 720; and it was held in M., K. and T. Ry. Co. v. McCoy, 7 Ind. Ter. 288, 104 S. W. 620:

"Ordinarily a witness who testifies to an affirmative is entitled to credit in preference to one who testifies to a negative."

To the same effect is Boston Insurance Co. et al. v. Messick, 286 Fed. 531 and The Charlotte (D. C.) 124 Fed. 989.

In the case at bar, while the jury found for the plaintiff, there was no competent evidence to support the verdict, and while it is a well settled rule in this state that a verdict will not be disturbed where there is reasonable evidence tending to support such verdict, yet in a case where there is no competent evidence reasonably tending to support a verdict and judgment. it will be reversed. Elson v. Walker, 80 Okla. 237, 195 Pac. 899; Tate et al. v. Colgate State Bank, 72 Okla. 276, 180 Pac. 687; E. M. Brash Cigar Co. v. Wilson, 32 Okla. 153, 121 Pac. 223; F. S. Reed Grocery Co. v. Miller, 36 Okla. 134, 128 Pac. 271; Conwill v. Eldridge, 35 Okla. 537, 130 Pac. 912; Cedar Rapids National Bank v. Bashara, 39 Okla. 482, 135 Pac. 1051; City of Duncan v. Tidwell, 48 Okla. 382, 150 Pac. 113; Morris v. Purcell Bank & Trust Co., 85 Okla. 45, 204 Pac. 436.

In Chi., R. I. & P. Ry. Co. v. Pedigo, 102 Okla. 72, 226 Pac. 72, it was held:

"A railroad company will not be held liable for personal injuries where there is no positive evidence, or reasonable inference, to be drawn from the testimony that the railroad company was guilty of negligence. The verdict of a jury is not binding upon this court where the testimony in support of same is not conflicting and where there is no positive evidence to support the same, nor any reasonable inference from all the testimony that tends to support the same."

The plaintiff in this case having wholly failed to produce any testimony reasonably tending to support the allegations of negligence on the part of the defendant, nor any facts from which any reasonable inference of negligence can be drawn, this cause should be reversed, with instructions to the trial court to grant the defendant a new trial.

By the Court: It is so ordered.