Ernest Eugene **BLEAKLEY**, Appellant,

v.

Garold M. **BOWLBY**, Executor of the Estate of Clyde D. Bowlby, Deceased, and Individually, Appellee.

No. 47844.

Supreme Court of Oklahoma.

Nov. 2, 1976.

Rehearing Denied Dec. 20, 1976.

Buck, Crabtree, Groves & Ransdell by William P. Bleakley, Earl D. Mills, Foliart, Mills & Niemeyer, Oklahoma City, for appellant.

John M. Luttrell, Norman, for appellee.

IRWIN, Justice:

Ernest Eugene Bleakley (plaintiff) filed a claim against the Estate of Clyde D. Bowlby, Deceased. Garold M. Bowlby (defendant), the Executor of the Estate, denied the claim and plaintiff commenced this action in the district court. Plaintiff's claim is based on the alleged oral contract between deceased (Clyde) and his second wife, Edith A. Bowlby relating to the disposition of their property on the death of the survivor. Edith predeceased Clyde. Plaintiff is Edith's only child by a prior marriage, and defendant is Clyde's only child by a prior marriage. Plaintiff sought to impose a constructive trust on a one-half interest in the estate based upon the alleged oral contract. The trial court denied plaintiff's claim and entered judgment for defendant. Plaintiff appealed from the order overruling his motion for a new trial.

Clyde and Edith were married in the early 1930's and shared a productive life together. Because of their advancing years and as a result of some concern over Clyde's health, they sought to plan the disposition of their joint estate so as to benefit their two sons and yet provide adequately for the survivor. While Clyde and Edith were living in Colorado, they discussed their plans with a friend who was a retired judge. As a result of these consultations, a mutual and conjoint will was prepared by the former judge purporting to dispose of the entire estate to the survivor, as trustee, for the survivor's use and benefit during his or her lifetime and for disposition of the remainder to plaintiff and defendant in equal shares. This conjoint will was executed in 1960.

Some years after Edith's death [1968] and the probate of her estate, Clyde drew a new will making a modest gift to plaintiff and bequeathing the remaining property to his own son, the defendant. Clyde's new will forms the basis for this litigation.

The trial court in its Memorandum of Judgment found:

"Plaintiff offered evidence which was inadmissible by reason of the Dead Man's Statute. Were such evidence considered, it would show they [Clyde and Edith] had entered an oral contract to

leave their joint estate equally to their sons upon their deaths, and that their conjoint will was intended to accomplish that purpose. However, the will was inartfully drawn, and did not in itself establish a trust or constitute an irrevocable disposition of their property."

The trial court, in its order overruling plaintiff's motion for new trial, found:

" * * * as stated in its Memorandum of Judgment * * * that the testimony of the plaintiff is inadmissible by reason of the Dead Man's Statute [84 [12] O.S. § 384] and therefore, plaintiff has failed to prove the existence of the contract alleged but, that if such testimony was admissible as evidence, the court would have found an agreement between the Bowlbys as alleged by plaintiff and would have imposed a constructive trust upon the Estate of Clyde D. Bowlby, deceased; * * *."

Plaintiff proceeded on the theory that Clyde and Edith had entered into a valid and binding oral contract to make and maintain mutual wills wherein their two sons [plaintiff and defendant] would share equally in the couple's estate. Plaintiff admits that in order for him to establish his rights under the oral contract his proof of the contract must be so cogent, clear and forcible as to leave no reasonable doubts as to its terms and conditions. *Lyons v. Luster*, Okl., 359 P.2d 567 (1960). Plaintiff asserts the trial court erred in refusing to admit and consider certain evidence and erred in determining that his proof was not otherwise sufficient to meet his burden. To the extent that it was evidence of the oral contract, plaintiff relied upon the 1960 conjoint will of Clyde and Edith. See *Tucker v. Zachary*, Okl., 269 P.2d 773 (1954).

▪ Plaintiff's testimony, inter alia, included oral declarations of Clyde and Edith. Plaintiff also submitted the deposition testimony of the attorney who drafted the will [Judge Shaw] and the testimony of Edith's sister-in-law [Mrs. Edna Ratliff].

Defendant not only interposed the Dead Man's Statute against plaintiff's testimony, but also objected to all of plaintiff's evidence because of the parol evidence rule on the theory that whatever oral agreement or contract Clyde and Edith may have entered into, it was merged into and superseded by their conjoint will.

Plaintiff's testimony concerning the oral declarations of Clyde and Edith would not be admissible [12 O.S.1971, § 384] and the taking or filing of plaintiff's deposition did not render such testimony admissible. *Davis v. Davis*, Okl., 536 P.2d 915 (1975). Without such testimony, the trial court either believed that plaintiff's other evidence was insufficient to meet the burden of proof as set forth in *Lyons*, supra, or that plaintiff's other evidence was inadmissible because of the parol evidence rule.

▪ The parol evidence rule [15 O.S. 1971, § 137], provides that the execution of a contract in writing, whether the law requires it to be in writing or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument. In *Dewberry v. Yellow Mfg. Acceptance Corp.*, Okl., 396 P.2d 522 (1964), we held that except in the event of accident, fraud or mistake, all previous oral discussions are merged into and superseded by the terms of the executed written agreement or instrument, and the instrument cannot be varied or the terms thereof changed by parol evidence. However, where an oral contract is reduced to writing, and the writing is not a complete and final statement of the entire transaction, parol evidence is admissible to show the full agreement. *Britton v. Johnson–McQuity Motor Co.*, 120 Okl. 221, 251 P. 74 (1927). And, as held in *Wichita Flour Mills Co. v. Guymon Equity Exchange*, 150 Okl. 245, 1 P.2d 657 (1936), when a writing does not purport to disclose the complete contract, or if, when read in the light of the attendant facts and circumstances, it is apparent that it contains only a part of the agreement entered into by the parties,

parol evidence is admissible to show what the rest of the agreement was; but such parol evidence must not be inconsistent with or repugnant to the intention of the parties as shown by the written agreement.

Under the above rules, the evidence upon which plaintiff relies is admissible only if it is not inconsistent with the 1960 conjoint and mutual will of Clyde and Edith and if it establishes the existence of an oral contract between the parties of which the conjoint will was not a complete expression. To determine the admissibility of plaintiff's other evidence, it will be necessary to examine the conjoint will.

Article IV, provides for the appointment of the survivor as the Executor or Executrix as the case may be, and in the event the survivor be unwilling, or unable to serve, plaintiff and defendant are nominated as Co-Executors. Article V relates to the powers and the authority of Executors.

Article VI, provides:

"We announce that all of our property of any kind or description is held in joint tenancy with right of survivorship and that this property has been accumulated by joint effort and in equal shares. We further declare that each of us has a son by a former marriage and that we, and each of us, feel an equal responsibility and interest in such sons.

"Therefore, should either of us survive the other for less than two years or we should die simultaneously from causes resulting from the same accident or from other causes; then, it is our will that all of our property both real, personal or mixed and wherever situate and held as such tenants in common shall be equally divided between said sons; hence we accordingly give, devise, and bequeath in equal shares all of said property enumerated in this article unto:

"Garold M. Bowlby, son of Clyde D. Bowlby by a former marriage, and Ernest Eugene Bleakley, son of Edith Alberta Bowlby by a former marriage."

Article VII provides for the Disposition of Property after Probate and:

"Upon a complete and full settlement of the probate proceedings and upon receipt of the property by the survivor of the property held by us in joint tenancy, the following disposition of all property acquired under the joint tenancy and under the terms of this Will is to be made as follows:

"(1) Should both makers of this Will be dead, said property so acquired shall descend and vest unconditionally to our sons in equal shares in accordance with the terms and conditions imposed by Article VI of this Will.

"(2) Should one of the makers of this Will be living when said probate proceedings are terminated such survivor is to receive all of the property derived from this Will and the property received as such joint tenant In Trust, however, for the use and benefit of our sons Garold and Ernest who have equal interest and share therein.

"(a) Such trustee may remarry; but the spouse of such surviving trustee shall have no claim, interest, or demand in said trust estate hereby created by reason of the marital status even though such spouse be living at the time of the decease or the trustee.

\* \* \* \* \* \*

"(f) At death of trustee the trust created herein is hereby dissolved. All remaining property in the trust becomes the property of our two sons in equal shares immediately."

In 1960, when Edith and Clyde executed their conjoint will, and when Edith died in 1968, most of their property was held as joint tenants with right of survivorship. Although the joint tenancy property passed by operation of law to Clyde, as the surviving joint tenant [*Littlefield v. Roberts,* Okl., 448 P.2d 851 (1968)], the will discloses a clear intent to make disposition of all their property on the death of the survivor, even the property passing to the survivor

outside the terms of the will. It is also clear that Clyde and Edith did not intend that a remarriage of the survivor would affect the final disposition of their property.

Although the trial court found "the will was inartfully drawn, and did not in itself establish a trust or constitute an irrevocable disposition of their property" their estate plan as disclosed by the will evidences a clear intent on their part that all their property, whether it was held in joint tenancy with right of survivorship or as tenants in common, was to vest unconditionally in equal shares to plaintiff and defendant upon the death of the survivor.

In order to give meaning to this plan of distribution, there had to have been some agreement outside the will between Clyde and Edith concerning the status and eventual disposition of their property upon the death of the survivor. To conclude otherwise would be to assume that they did not intend to benefit their children [plaintiff and defendant] equally. Such an assumption may not be made due to the express language in the will.

Plaintiff testified concerning the circumstances surrounding the making of the conjoint will, and such testimony, not being the oral declaration of either Clyde or Edith, established how the property was acquired and the extent and ownership of the property. His testimony also established a family relationship wherein Clyde and Edith would reasonably desire to equally benefit plaintiff and defendant.

Mrs. Edna Ratliff married Edith's brother and had known Clyde shortly before Clyde and Edith were married. Mrs. Ratliff had been with the trust department of a bank for a number of years and she testified that while visiting with Clyde and Edith in their home in Colorado in 1956, "they both told me in the presence of each other, that it was their intent and agreement upon the death of the survivor, that their properties were to go equally to their two sons, * * *." Again in 1958, she heard them say the same thing while visiting them in Colorado. In 1961, she said they told her their agreement had been reduced to writing and she discussed it again with them in 1966. At Edith's funeral in Norman, Oklahoma, Mrs. Ratliff said Clyde showed her a copy of the will and he [Clyde] said "he thought it was a very fine instrument and that it did convey their intent and agreement."

Judge Shaw's testimony discloses that he knew Clyde and Edith socially; had done some title work for them; and they asked him to prepare their will. Judge Shaw testified, "they wanted it so that after they had gotten through their property, which they wanted to be in Trust, each for the other, the two children would share equally in the bequest and everything else." He said the intent of the parties was that the survivor could use all the property for his use and benefit, and "whatever was left, it was to be evenly divided between the child of each of the makers of the will."

Defendant's only testimony relating to the existence of the alleged oral contract was in response to questions on direct and cross-examination inquiring as to whether he had any knowledge thereof before Edith's death. Defendant testified only that he never heard the will or agreement discussed and knew nothing of the will's existence until it was probated as his step-mother's testament. Although defendant's disclaimer of knowledge as to the existence of the agreement is not negative evidence, his having been in a position to know of such an agreement had it existed, the testimony was nonetheless of a negative character. *Sand Springs Ry. Co: v. McWilliams,* 170 Okl. 85, 38 P.2d 539 (1935). As a general rule, evidence essentially negative in character is not adequate to overcome contrary positive testimony. *Sand Springs Ry. Co. v. McWilliams,* supra; *Oklahoma Union Ry. Co. v. Houk,* 109 Okl. 187, 235 P. 499 (1924).

Plaintiff's testimony, and the testimony of Mrs. Ratliff and Judge Shaw are not inconsistent with the terms of the will.

The fact that such will may have been inartfully drawn, and did not in itself establish a trust or constitute an irrevocable disposition of their property does not render such testimony incompetent. We hold that the testimony of plaintiff, except that concerning the oral declarations of Clyde and Edith was admissible; and that the testimony of Mrs. Ratliff and Judge Shaw was admissible. The trial court committed reversible error in not considering all the admissible evidence in reaching his decision.

We hold that plaintiff established by clear, cogent and forcible evidence the existence of an oral contract between Clyde and Edith for the disposition of their property upon the death of the survivor in equal shares to plaintiff and defendant.

Judgment of the trial court reversed and the cause is remanded to enter judgment for plaintiff upholding the oral contract between Clyde and Edith, and proceed accordingly.

All the Justices concur.