# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## McKahan v. The Baltimore & Ohio Railroad Company, Appellant.

223     1
[41SC¹233

*Negligence—Railroads—Grade crossing—"Stop, look and listen"—Nonsuit—Contributory negligence.*

1. In an action against a railroad company to recover damages for death of plaintiff's husband, a nonsuit should be entered where it appears from the testimony of her own witnesses that at the time of the accident the deceased, who was driving a double team, stopped at a point 225 feet from the grade crossing, from which point only the stack of an engine or smoke issuing from it could be seen in the direction from which the train was coming, and that he then proceeded at a good gait down to the crossing, with all view from the direction of the approaching train cut off by an embankment and other obstructions until he reached a siding, where, if he had stopped, nineteen feet from the main track, he would have had an unobstructed view of the track for a distance of 2,000 feet in the direction from which the train was coming.

*Trial—Misconduct of juror—Continuance—Withdrawal of juror.*

2. Where an improper remark and a misstatement of the law are made by the trial judge during an argument on a motion for a nonsuit, and this is followed by applause from the audience in the court room, in which one of the jurors impaneled in the case joins by clapping his hands, it is reversible error for the court to refuse to withdraw a juror and continue the case. Under such circumstances the court should on the instant, and of its own motion, take notice of the misconduct of the juror, and, after discharging him from further service, continue the case, and impose a proper penalty upon him.

VOL. CCXXIII—1              (1)

Argued Oct. 15, 1908.   Appeal, No. 61, Oct. T., 1908, by defendant, from judgment of C. P. Washington Co., Feb. T., 1907, No. 107, on verdict for plaintiff in case of Caroline Mc-Kahan v. The Baltimore & Ohio Railroad Company.   Before MITCHELL, C. J., FELL, BROWN, POTTER, ELKIN and STEW-ART, JJ.   Reversed.

Trespass to recover damages for death of plaintiff's husband. Before McILVAINE, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $5,000.   Defendant appealed.

*Errors assigned* were in refusing binding instructions for defendant, and in refusing to withdraw juror and continue the case.

*Norman E. Clark*, with him *Winfield McIlvaine*, for appellant.—A nonsuit should have been entered: Boltz v. R. R. Co., 212 Pa. 154; Corcoran v. R. R. Co., 203 Pa. 380; Urias v. R. R. Co., 152 Pa. 326; Keppleman v. Ry. Co., 190 Pa. 333; Mankewicz v. R. R. Co., 214 Pa. 386; Knox v. Ry. Co., 202 Pa. 504; Reading & Columbia R. R. Co. v. Ritchie, 102 Pa. 425; Kinter v. Penna. R. R. Co., 204 Pa. 497; Dryden v. Penna. R. R. Co., 211 Pa. 620; Coppuck v. R. R. Co., 191 Pa. 172; Lees v. R. R. Co., 154 Pa. 46.

In view of the unusual and remarkable demonstration which occurred in the trial of this case, the court should have sustained our motion to withdraw a juror and continue the same: Penna. R. R. Co.'s Case, 213 Pa. 373; Fisher v. Penna. Co., 34 Pa. Superior Ct. 500; Saxton v. Rys. Co., 219 Pa. 492.

*J. M. Patterson*, for appellee.—The case was for the jury: Ellis v. Lake Shore, etc., Ry. Co., 138 Pa. 506; Phila., etc., R. R. Co. v. Ervin, 89 Pa. 71; Keiser v. Lehigh Valley R. R. Co., 212 Pa. 409; Seifred v. R. R. Co., 206 Pa. 399; Laib v. R. R. Co., 180 Pa. 503; Coolbroth v. R. R. Co., 209 Pa. 433; Confer v. R. R. Co., 209 Pa. 425; Cromley v. R. R. Co., 208

Pa. 445; Toban v. Coal Co., 24 Pa. Superior Ct. 475; Newton v. R. R. Co., 18 Pa. Superior Ct. 18; Muckinhaupt v. R. R. Co. 196 Pa. 213; Penna. R. R. Co. v. Ogier, 35 Pa. 60; Bard v. Phila. & Reading Ry. Co., 199 Pa. 94; Elston v. R. R. Co., 196 Pa. 595.

There was no error in refusing to withdraw a juror: Com. v. Jongrass, 181 Pa. 172; McClain v. Com., 110 Pa. 263.

OPINION BY MR. JUSTICE BROWN, January 4, 1909:

In the opinion of the court overruling the motion of the defendant for judgment non obstante veredicto this case is said to be a close one. On the question of the contributory negligence of the deceased it cannot be so regarded. From the testimony of plaintiff's witnesses but one inference is possible as to his conduct in approaching the crossing, and it was, therefore, for the court to so declare. Failure to discharge this duty resulted in a finding by the jury which is not a true one.

Charles McKahan, the husband of appellee, drove into the borough of Claysville with a double team on October 17, 1906, and, after remaining there a short time, started for his home by way of Bell avenue. Driving along this route it was necessary for him to pass over the track of the appellant company, running east and west and crossing the avenue at right angles and at grade. In attempting to cross the track his team was struck by a locomotive drawing a caboose and he and the horses were killed. The crossing is an admittedly dangerous one, and its danger was well known to the deceased, who had constantly crossed it for many years. The danger in going south over it is due to the character of the approach from the north—the direction from which the deceased came. The locomotive was coming from the west, and the view of the track in that direction is obstructed for quite a distance north of the defendant's roadbed. At a point about 225 feet north of the crossing McKahan stopped. The railroad track could be seen there looking to the east, but not to the west, though the smokestack of an engine approaching from the west could be seen. After four sections of a train had passed from west to east the deceased started his horses, but his view of the track

to the west from the point at which he stopped was cut off down to the crossing by an embankment and other obstructions until he reached the first or mill siding. Between this siding and the main track of the railroad company there was another siding, on which there were no cars. Between the north rail of the main track, laid on the south side of the railroad company's right of way, and the south rail of the mill switch or siding, on which some cars were standing, there was a clear space of 19 feet, commanding an unobstructed view of the main track for a distance of 2,000 feet to the west. From the time the deceased started from the point about 225 feet from the crossing he did not stop again, but went on at a good gait until his team was struck. F. J. Egan, the proprietor of a planing mill on the east side of Bell avenue near the crossing, was one of plaintiff's witnesses and saw the collision. He testified that he was in his office when the train whistled; that he looked out of a window and saw McKahan pass by his planing mill, about 130 feet from the main track; that McKahan was going toward the crossing when the train whistled; that witness ran out and called to him to stop, knowing that if he went ahead he would be caught; that he did not stop, but drove straight on to the track, and the engine struck one of the horses just back of the foreleg. The testimony of this witness is that the deceased "did not stop at all as he went on" by the planing mill to the main track.

The foregoing facts all appear from the testimony of plaintiff's witnesses, and the nonsuit asked for should have been granted. Instead of that disposition of the case it was submitted to the jury on the theory of the presumption that the deceased had stopped, looked and listened at a point beyond the mill siding, where he had a view to the west for a long stretch, and, in the opinion overruling the motion for judgment for the defendant, the court regarded this presumption as strengthened by the testimony of a witness that McKahan was pulling the lines as the horses reared up. This occurred just as the engine struck them, and cannot be regarded as any evidence of the exercise of care by the deceased. The horses, when driven by him to the point of death, would naturally

have reared up, and he then would instinctively have tried to save himself, but it was too late for him to do what he ought to have done before he attempted to cross. The presumption that he had exercised care was completely overcome by the witness for the plaintiff, who saw just what he did, and reference need not be made to similar clear testimony of the witnesses for the defendant. Though the whistle had sounded a signal that the locomotive was approaching, McKahan drove right onto the track in the face of a fruitless effort to stop him. The case is not even one of stopping at a point where a view of the track could have been had in the direction from which the locomotive was coming, for at the point where McKahan stopped he could have seen nothing but the smokestack of an approaching engine, or the smoke emitted from it, and he then proceeded for more than 200 feet with all view of the track cut off, without stopping until he drove in front of the locomotive, the approach of which he concededly would have seen if he had stopped at the south rail of the mill switch. Under no one of our cases can this judgment stand. Among those that are conclusive against it are Urias v. Pennsylvania R. R. Co., 152 Pa. 326; Corcoran v. Pennsylvania R. R. Co., 203 Pa. 380, and Blotz v. Lehigh Valley Railroad Company, 212 Pa. 154.

But, even if the case were for a jury, the judgment would have to be reversed for the misconduct of a juror following an improper remark and a misstatement of the law by the trial judge during the argument on the motion for a nonsuit. Counsel for the defendant stated in that argument that the case was one of a railroad so constructed across a public road that there was no point where a traveler could stop, look and listen, and, as he avers, before he could follow this with the statement that there was such a point beyond the mill siding, he was interrupted by the court with the remark that, if that were so, "the railroad ought certainly to have had somebody there to give warning." This was followed by applause from the audience in the court room, in which one of the jurors impaneled in the case joined by clapping his hands. A motion was promptly made by counsel for the defendant for the

withdrawal of a juror and the continuance of the case until the next term, which was refused. On the instant, the court should, of its own motion, have taken notice of the misconduct of the juror and, after discharging him from further service and continuing the case, imposed a proper penalty upon him. This was due to the orderly administration of justice and to the court's own dignity. Neither the trial judge's "knowledge of the offending juryman" nor his apology can be regarded as an excuse for the court's failure to discharge its duty, and, in neglecting to do so, the case went on, in the face of defendant's protest, before at least one juror who had shown himself unfit to try it. In view of his open exhibition of feeling and his applauding concurrence in the incorrect statement of the court that it was the duty of the defendant to have had somebody at the crossing to give warning, it was the appellant's clear right to ask that he be declared disqualified to further sit in judgment between it and the plaintiff, for the case could not safely be thereafter committed to him by any admonition of the trial judge in his charge that it would have to be considered and disposed of by the jury "without any reference to that little incident" and the expression of confidence by the court that the offending juror would so dispose of it. The impression made upon the mind of the juror by the remark of the judge was manifestly against the defendant and not likely to be changed by anything submitted by it in its defense. Those of us who have had experience in jury trials know that impressions once made are not easily erased, in spite of all the caution jurors may receive from the court: Shaeffer v. Kreitzer, 6 Binn. 430. "It is one thing to prevent the entry of an influence into the mind and quite another to dislodge it; as well might one attempt to brush off with the hand a stain of ink from a piece of white linen; one in the very nature of things is just as impossible as the other:" ORLADY, J., in Fisher v. Pennsylvania Co., 34 Pa. Superior Ct. 500.

Judgment reversed.