# Darbrinsky, Appellant, *v.* Pennsylvania Company.

*Negligence — Contributory negligence — Railroad crossings —*
*Stop, look and listen—Nonsuit.*

A nonsuit was properly entered in an action to recover damages for the death of plaintiff's husband in a grade crossing accident, where it appeared that deceased had a clear view of the track for one-half mile in the direction from whence the train came, at a point about twenty-five feet from the crossing, and that this view remained unobstructed for the entire distance to the crossing, and that his horse was struck before it had stepped across the first rail of the track.

Mr. Justice MESTREZAT dissents.

Argued Oct. 6, 1914.  Appeal, No. 138, Oct. T., 1914, by plaintiffs, from judgment of C. P. Lawrence Co., Dec. T., 1910, No. 96, refusing to take off nonsuit in case of Lena Darbrinsky, in her own right and in behalf of Walter Darbrinsky, Paul Darbrinsky, Richard Darbrinsky, Charles Darbrinsky, Alfred Darbrinsky, Andy Darbrinsky, Elsie Darbrinsky, and Fred Darbrinsky v. The Pennsylvania Company.  Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.  Affirmed.

Trespass to recover damages for the death of plaintiff's husband.  Before PORTER, P. J.

The opinion of the Supreme Court states the case.

The court entered a nonsuit which it subsequently refused to take off.  Plaintiffs appealed.

*Error assigned* was the refusal to take off the nonsuit.

*C. W. Fenton,* with him *F. R. Haun* and *W. N. Anderson,* for appellants.

*Charles R. Davis,* with him *Oscar L. Jackson,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 2, 1915:

This action was brought by the widow in her own right and in behalf of her children for damages resulting from the death of her husband who was killed at a railroad crossing. The defense relied on at the trial and here is that there can be no recovery because of the contributory negligence of the deceased husband. The accident occurred at a grade crossing and the question for decision here is whether the husband, driver of the horse and wagon, was so clearly guilty of contributory negligence as to warrant the court in thus declaring as a matter of law. The learned trial judge upon motion granted a compulsory nonsuit, and from the refusal of the motion to take it off, plaintiffs have appealed. The learned trial judge sums up the important testimony as follows:

"The testimony of the son, who was in the wagon with his father at the time of the accident, is to the effect that as his father drove down the road, he looked down the track, and then looked up and just then was killed. That is the testimony of the boy who was in the wagon at the time and who survived this accident. This shows that as he looked up the horse was struck; he must have been then quite close to the track. In fact, so close that a part of the horse was on the track or within the line that the train would cover in going over the place. Now, the evidence also shows that the deceased looked up the track westward at a point estimated at about 125 to 150 feet south of the track. At this place the track could not be seen but an approaching train could be seen. The testimony of Mr. Edwards and Mr. Hulette and Mr. McCreary is to the effect that at a point 25 feet south of the south rail of the east bound track, the track could be seen for a distance of one-half mile westward. Taking that testimony into consideration, also the testimony of the son to the effect that the deceased was struck at about the same instant that he looked up the track, to my mind clearly indicates that the deceased did not stop, look and listen at the last safe place."

In addition it may be said that the deceased had a clear view of the track for one-half mile in the direction from whence the train came at a point about 25 feet from the crossing and that this view remained unobstructed for the entire distance. If the driver had stopped his horse at any point within the 25 feet where he had a clear view of the approaching train the accident would not have happened. Why he did not do so no one can say, but it is quite evident that he did not see the approaching train which he could have seen by the exercise of reasonable care, or he would not have taken the risk of such imminent danger. The facts show that he drove his horse up to the track and right in front of the rapidly moving train and as a result sustained the injuries which caused his death. These facts bring the case at bar within the rule to which this court has adhered in a long line of cases: Urias v. Railroad Co., 152 Pa. 326; Blotz v. Railroad Co., 212 Pa. 154; McKahan v. Railroad Co., 223 Pa. 1. It was held in Dehoff v. Railway Co., 229 Pa., 192, that it was the duty of a driver approaching a railroad crossing to stop where he can see, and that stopping at a point 100 feet from the track where his view is obstructed by an embankment and a building, when at a point 30 feet from the track there is a clear view of 500 feet and 10 feet from it a clear view of 1,000 feet, is not a compliance with the rule. The facts of that case in nearly every essential particular are identical with the one at bar. No useful purpose would be served by a reference to the numerous cases in which this question has been considered. We cannot regard this case in any other light than that of the driver of a team, who has a clear view of the track in the direction from which the train was approaching for a distance of one-half mile, thoughtlessly and carelessly driving right in front of the engine, with the result that the head and shoulders of the horse were struck just as it was about to step upon the first rail of the track. It is true that the clear space in which there was a view of the track for a half mile

was limited to a distance of 25 or 30 feet before reaching the crossing, but it is not disputed that this space was sufficient to enable the driver to see the approaching train, if he had looked, and to have avoided the accident by stopping, if he had done his duty as the law requires. It must not be overlooked that the head of the horse was struck at the very moment he was about to step over the first rail of the track. Certainly under such circumstances the driver could have avoided the accident if he had stopped his horse at any point within the 25 feet in which he had a clear view of the track for one-half mile. Upon a careful review of the whole record we cannot say that the learned court below committed reversible error in refusing to take off the nonsuit.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MESTREZAT, January 2, 1915:

The negligence of the plaintiff and defendant should have been submitted to the jury. The deceased stopped near a small walnut tree, about one hundred and twenty-five feet south of the company's tracks, and looked in both directions for approaching trains. This was the first point from which he could see a train on the tracks approaching from either direction, and, according to the plaintiff's evidence, was the ordinary and usual place to stop and listen for trains before crossing the defendant's tracks. As the deceased proceeded down the hill, the embankment on both sides of the road prevented him seeing the tracks until he was within fifteen or twenty feet of the railroad. This is the other point at which it is alleged by defendant the deceased should have stopped and looked before attempting to cross the tracks. He did not cease his vigilance from the time he stopped until he was committed to the crossing, but, as testified by the witnesses, continued to look up and down the track. As to the opportunity to see an approaching train and the proper place to stop, Paul Darbrinsky tes-

tifies: "I think I am pretty sure there is just the one place you can stop and look; although there is two places, if you stop at the lower place it would be too close the track and the only place you can see up the track is the lane by the little walnut tree; the lane sets above the walnut tree and one hundred and twenty-five feet from the track, that would be the only place unless you get to the crossing of that track—you would be mighty close the crossing before you can see up the track from the road because a portion of the track is hidden from view and you cannot see until you get too close the crossing." The plaintiffs called several witnesses for the purpose of showing that the first place the deceased stopped was the last safe place to stop, look and listen, and that it was also the usual and customary place for a traveler to stop, look and listen before crossing the tracks. This testimony was rejected but on what ground we do not know. It was certainly material to the issue being tried; but as the appellants have not assigned it as error we cannot consider it here. Paul Darbrinsky's testimony, however, was sufficient to send the case to the jury on the question of the negligence of the deceased. We have distinctly ruled that the usual and customary place for travelers using the road to stop, look and listen for trains, cannot be said, as a matter of law, to be a negligent and improper place, although there might be a point nearer the crossing where a better view can be had, but it is so close as in the event of horses becoming frightened, that accidents would be unavoidable. The learned court says in his opinion: "I think I will agree with counsel for the plaintiffs that if there was evidence in the case that called in question the practicability of the last thirty feet as a safe place to stop, look and listen, or if under the evidence there appeared to be a dispute as to whether or not that was a practical place to stop, look and listen, then evidence as to what is the customary practice of persons passing that way would be admissible." Paul Darbrinsky's evidence certainly shows

that it was impracticable to stop within fifteen or twenty feet of the tracks, the only place other than the point on the hill, one hundred and twenty-five feet south of the tracks, where the deceased could have seen along the tracks for any distance. In Whitman v. Pennsylvania R. R. Co., 156 Pa. 175, Mr. Justice MITCHELL speaking for the court said (p. 178) : "If notwithstanding the drawbacks of the place where plaintiff stopped, it still had sufficient advantage over other places to make it the habitual choice of travelers on that road only a jury can say whether or not it was the best or a proper place to stop, and even if it was, whether considering its disadvantages it was not negligence in the plaintiff not to stop a second time on the level before reaching the track." This is applicable to the facts of the case in hand, and, in my judgment rules it.